IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD WEISS, Sr., : | |
| AS CO-EXECUTOR OF THE ESTATE : | |
| OF DONALD WEISS, Jr. DECEASED, et al., : | CIVIL ACTION |
|     Plaintiffs : | No. 04-665 |
| : | |
|     v. : | |
| : | |
| COUNTY OF CHESTER, et al. : | |
|     Defendants : | |
|                                                                 : | |

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.**                                                                                                    **October 5, 2005**

        Before the Court is Plaintiffs' Motion to Compel in this civil rights action. Plaintiffs seek discovery of "any and all records relating to a 'Peer Review' performed by, conducted by, or with the assistance of" PrimeCare Medical, Inc. ("PrimeCare") "with respect to the suicide death of" Plaintiffs' decedent, Donald Weiss, Jr. ("Weiss").[1] Plaintiffs suit comes pursuant to 42 U.S.C. § 1983 (2000), and alleges that PrimeCare and Elaine Ziegler (collectively, "Defendants"), a therapist who treated Weiss during his incarceration, violated Weiss's constitutional rights during his incarceration at the Chester County Prison ("CCP"). Additionally, Plaintiffs assert several state law claims.

**I. Background**

        On January 7, 2002, North Coventry Township Police arrested Weiss at his home on allegations of domestic violence. The same day, Weiss was transferred to the CCP to await his preliminary hearing and trial on the charge of domestic violence. During Weiss's incarceration at CCP, his mental health deteriorated. On numerous occasions, Weiss met with, or attempted to meet

---

[1] Pl. Mot. to Compel 1.

with, mental health professionals at the prison.[2]  On February 20, 2002, Weiss hung himself in his cell.

After Weiss' suicide, PrimeCare convened a mortality review committee to conduct an internal investigation into his death.[3]  PrimeCare medical personnel authored a report containing the investigation's findings (the "Mortality Review report").  During discovery, Plaintiffs requested from Defendants "[a]ny and all records regarding an investigation by [CCP], or any other [CCP] Defendants, into the events surrounding the death of Donald Weiss, Jr."[4]  Defendants object to production of the Mortality Review report, arguing that the report is protected by Pennsylvania's Peer Review Protection Act (the "Peer Review Act" or the "Act").[5]

In relevant part, the Act provides:

> The proceedings and records of a review committee shall be held in confidence and shall not be subject to discovery or introduction into evidence in any civil action against a professional health care provider arising out of the matters which are the subject of evaluation and review by such committee and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to any evidence or other matters produced or presented during the proceedings of such committee or as to any findings, recommendations, evaluations, opinions or other actions of such committee or any members thereof . . . .[6]

---

[2] The mental health professionals at CCP, including Defendant Ziegler, function under the aegis of PrimeCare's Inmate Health Care Services Agreement with CCP.  See Def. Ex. C.

[3] Def. Ex. A at 71-75.

[4] Pl. Mot. to Compel 1 (internal quotations omitted).

[5] 63 Pa. Stat. Ann. § 425.1 et seq. (1996).

[6] 63 Pa. Stat. Ann. § 425.4 (1996).

Plaintiffs argue in their Motion to Compel that the Act's protection does not extend to the Mortality Review report because (1) Ziegler, as "an unlicensed psychotherapist," is not a "professional health care provider"[7] covered by the Act and (2) PrimeCare is not a "licensed health care provider" since the company provides health services to inmates at CCP.[8]

Pursuant to Court Order,[9] the parties filed supplemental memoranda addressing (1) PrimeCare's role in providing healthcare to CCP and (2) how PrimeCare is licensed and/or regulated by the Commonwealth of Pennsylvania in its role as a health care provider.[10] The Court's intention in ordering the supplemental memoranda was to clarify whether the scope of the Act extends to PrimeCare, such that the Mortality Review report enjoys the state law privilege. However, clear precedent establishes that it is insufficient for this Court to limit its consideration to whether the privilege provided by the Peer Review Act extends to PrimeCare's Mortality Review report, as federal law also governs this issue.

## II.   Discussion

Defendants argue that Pennsylvania's peer review privilege "protects the confidentiality of the mortality review produced by PrimeCare, and does not permit the mortality

---

[7] Section 425.2 of the Act defines "professional healthcare provider[s]" as "individuals or organizations who are approved, licensed or otherwise regulated to practice or operate in the health care field under the laws of the Commonwealth . . . ." 63 Pa. Stat. Ann. § 425.2.

[8] Pl. Mot. To Compel 4-5.

[9] Order of July 18, 2005 [Document # 48].

[10] See id.

3

review to be the subject of discovery . . . in this matter."[11]  That argument fails to address the principles articulated in federal law.

### A. Standard for Applying Privileges in Federal Court

Federal Rule of Civil Procedure 26(b)(1) frames the contours of permissible discovery in federal courts, providing: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."[12]  Therefore, at the initial stages of a federal case "all relevant material is discoverable unless an applicable evidentiary privilege is asserted."[13]  Assertions of evidentiary privileges in federal court, such as Defendants', are governed by Federal Rule of Evidence 501, which provides:

> [T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of witness, person, government, State, or political subdivision thereof shall be determined in accordance with state law.[14]

Thus, Federal Rule of Evidence 501 requires application of federal privilege law to each element of a claim except those where state law "supplies the rule of decision."[15]  Put another way, "federal

---

[11] Def. Opp'n to Mot. to Compel 2.

[12] Fed. R. Civ. P. 26(b)(1).

[13] Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).

[14] F.R.E. 501.

[15] Id.

privileges apply to federal law claims, and state privileges apply to claims arising under state law."[16]

The case at bar, however, "presents the complexity of having both federal and state law claims in the same action."[17] In Pearson, the Third Circuit reaffirmed the rule that "'when there are federal law claims in a case also presenting state law claims, the federal rule favoring admissibility, rather than the state law privilege, is the controlling rule.'"[18] Thus, the mere fact that state law claims and federal law claims coexist in this action does not by itself justify application of Pennsylvania's peer review privilege.[19]

### B. Application of the Federal Standard

Privileges can be created by statute or by common law.[20] Unlike Pennsylvania's

---

[16] Pearson, 211 F.3d at 66. Courts addressing if and when it is proper to apply state privilege law in cases arising under federal law rely on Federal Rule of Evidence 501 to conclude that application of a state's privilege law to a federal case brought on the basis of a federal question is improper. See, e.g., Univ. of Pennsylvania v. EEOC, 493 U.S. 182, 188-89 (noting that Federal Rule of Evidence 501 controls whether or not a federal court will recognize a privilege in a federal question case); Holland v. Muscatine Gen. Hosp., 971 F.Supp. 385, 388 (S.D. Iowa 1997) (same); Johnson v. Nyack Hosp., 169 F.R.D. 550, 557 (S.D.N.Y. 1996) (same); LeMasters v. Christ Hosp., 791 F.Supp. 188, 189 (S.D. Ohio 1991) (same); Tucker v. United States, 143 F.Supp.2d 619, 621-22 (S.D.W.Va. 2001) (same); Adeduntan v. Hosp. Auth. of Clarke County, No. 3:04-cv-65, slip op. at 11 (M.D.Ga. Aug. 25, 2005) (same); Burrows v. Redbud Comm. Hosp. Dist., 187 F.R.D. 606, 610-11 (N.D.Cal. 1998) (same). Cf. Hill v. Sandhu, 129 F.R.D. 548, 548 (D.Kan. 1990) (applying state peer review privilege where "'[f]ederal jurisdiction is based on diversity of citizenship and amount in issue.'").

[17] Pearson, 211 F.3d at 66.

[18] Id. (quoting Wm. T. Thompson Co. v. Gen. Nutrition Corp., 671 F.2d 100, 104 (3d Cir. 1982)).

[19] Discussing the federal court's preference for federal privilege law, the D.C. Circuit Court held that "[w]here [information] is relevant to both federal and state claims but the federal and state privilege rules are inconsistent, the application of an inconsistent state rule in either direction could undermine the federal evidentiary interest – either by barring disclosure of [information] that federal law permits a party to see, or by requiring the disclosure of [information] that federal law protects from prying eyes." In re: Sealed Case (Medical Records), 381 F.3d 1205, 1212 (D.C. Cir. 2004). This rule applies in numerous federal circuits, see Virmani v. Novant Health Incorp., 259 F.3d 284, 287 (4th Cir. 2001); Hancock v. Dodson, 958 F.2d 1367, 1373 (6th Cir. 1992); Hancock v. Hobbs, 967 F.2d 462, 466 (11th Cir. 1992); Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 (9th Cir. 1992); von Bulow v. von Bulow, 811 F.2d 136, 141 (2d Cir. 1987); Memorial Hosp. v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981); but see Motley v. Marathon Oil Co., 71 F.3d 1547, 1551 (10th Cir. 1995) (applying state privilege law to state cause of action even though the matter involved federal law claims).

[20] See Edward J. Imwinkelried, The New Wigmore: A Treatise on Evidence - Evidentiary Privileges, 144 (Richard D. Friedman ed., Aspen Law & Business 2002).

legislature, Congress has not statutorily enacted a medical peer review privilege under which it could be argued that PrimeCare's Mortality Review report is protected.[21] Nor does such a privilege exist under federal common law.

Federal Rule of Evidence 501 instructs courts to develop federal common law privileges according to "the principles of the common law as they may be interpreted . . . in the light of reason and experience."[22] The applicable test in assessing whether the federal common law should recognize a new privilege "is whether such a privilege 'promotes sufficiently important interests to outweigh the need for probative evidence.'"[23] It is well established that "privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence.'"[24] In fact, the Third Circuit flatly announced that "privileges are disfavored."[25] Finally, "where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself," courts should be reluctant to recognize the privilege as a matter of federal common

---

[21] The best argument that congressional enactment provides a medical peer review privilege points to the Health Care Quality Improvement Act of 1986 ("HCQIA"). Congress enacted the HCQIA on the understanding that "[t]here is an overriding national need to provide incentive and protection for physicians engaging in effective professional peer review." 42 U.S.C. § 11101(5) (2000). The HCQIA provides qualified immunity to professionals who participate in peer reviews that meet the law's standards. 42 U.S.C. § 11111(a) (2000). That argument fails, however. Courts consistently have held that the HCQIA does not create a statutory medical peer review privilege. E.g., Agster v. Maricopa County, 406 F.3d 1091, 1094 ("The [HCQIA] granted immunity to participants in medical peer reviews . . . but did not privilege the report resulting from the process."); Robertson v. Neuromedical Center, 169 F.R.D. 80, 83-84 (M.D. La. 1996) ("There is no historical or statutory basis for a peer review materials privilege"); Teasdale v. Marin Gen. Hosp., 138 F.R.D. 683, 690 (N.D. Cal. 1991) ("Congress spoke loudly with its silence in not including a privilege against discovery of peer review materials in the HCQIA."); Johnson, 169 F.R.D. at 560 (noting that the HCQIA does not establish a privilege for peer reviewed materials).

[22] F.R.E. 501.

[23] Pearson, 211 F.3d at 67.

[24] Id. at 189 (quoting Trammel v. United States, 445 U.S. 40, 51 (1980)).

[25] In re Grand Jury, 103 F.3d 1140, 1149 (3d Cir. 1997).

law.[26]

### C. Recognition of State Law

Federal courts, however, should not ignore the "wisdom of state lawmakers"[27] when deciding whether the federal common law should incorporate a state law privilege. In fact, "[t]he policy decisions of the States bear on the question whether federal courts should recognize a new privilege or amend the coverage of an existing one."[28] Additionally, "a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal . . . policy."[29] Therefore, a court "may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state."[30] Where, as here, it is alleged that a defendant acted under color of state law to violate a citizen's rights, "[t]he appropriateness of deference to a state's law of privilege is diminished."[31]

It is against this backdrop that the Court must assess whether to recognize Pennsylvania's peer review privilege as a matter of federal common law in this case. The Peer Review Act was enacted "to serve the legitimate purpose of maintaining high professional standards

---

[26] Univ. of Pa. v. EEOC, 493 U.S. 182, 189 (1990).

[27] Johnson v. Nyack Hosp., 169 F.R.D. 550, 559 (S.D.N.Y. 1996).

[28] Jaffee v. Redmond, 518 U.S. 1, 12-13 (1996).

[29] Pa. Protection & Advocacy, Inc. v. Houstoun, 1999 WL 1045152 (E.D. Pa 1999), aff'd, 228 F.3d 423 (3d Cir. 2000) (quoting United States v. King, 73 F.R.D. 103, 105 (E.D.N.Y. 1976).

[30] Riley v. City of Chester, 612 F.2d 708, 715 (3d Cir. 1979).

[31] Pearson, 211 F.3d at 68; see also ACLU v. Finch, 638 F.2d 1336, 1344 (5th Cir. 1981) ("[T]here is a special danger in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged.").

7

in the medical practice for the protection of patients and the general public."[32] Pennsylvania courts have determined:

> The Act represents a determination by the legislature that, because of the expertise and level of skill required in the practice of medicine, the medical profession itself is in the best position to police its own activities. The need for confidentiality in the peer review process stems from the need for comprehensive, honest, and somtimes critical evaluations of medical providers by their peers in the profession.[33]

Although the interests reflected in the state privilege are important, they are insufficient to outweigh the need for probative evidence in this case. At issue in Plaintiffs' action are questions integral to the development of federal policy concerning the civil rights of inmates suffering from mental health problems. And to preclude discovery of the Mortality Review report here would be detrimental to the development of that policy. Thus, resolution of these issues demands application of the fundamental principle of the liberal discovery characteristic of federal practice. Characterized this way, reason and experience dictate that Pennsylvania's peer review privilege not be applied as federal common law in this instance.

### D. Congressional Treatment of the Issue

This Court declines to recognize a privilege where Congress "has considered the relevant competing concerns but has not provided the privilege itself."[34] Here, Congress had two occasions to consider whether to extend the privilege to materials produced by medical peer reviews:

---

[32] Joe v. Prison Health Servs., Inc., 782 A.2d 24, 32 (Pa. Commw. Ct. 2001).

[33] Id. (citing Young v. Western Pa. Hosp., 722 A.2d 153 (Pa. Super. 1998)

[34] Univ. of Pa., 493 U.S. at 189.

first in 1986, when the HCQIA was enacted, and again in 1987, when Congress amended the statute. Congress declined the opportunity to extend the privilege to materials produced by review committees on both occasions. In light of Congressional forbearance on this issue, this Court cannot recognize as federal common law a privilege of the kind embodied in Pennsylvania's Peer Review Act.

Finally, the Court notes that it is unnecessary to decide the earlier raised issue of whether or not PrimeCare is a licensed health care provider for purposes of the Peer Review Act. Whereas that determination is necessary to apply Pennsylvania law, it is unnecessary here— where the issue is governed by federal law. Therefore, the Court declines to address PrimeCare's status as a health care provider under the Peer Review Act.

### III. Conclusion

Because the records sought by Plaintiffs are not protected by any privilege, Plaintiffs' Motion to Compel is granted.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA\

| | | |
|---|---|---|
| **DONALD WEISS, Sr.,** | : | |
| **AS CO-EXECUTOR OF THE ESTATE** | : | |
| **OF DONALD WEISS, Jr. DECEASED, et al.,** | : | **CIVIL ACTION** |
| **Plaintiffs** | : | No. 04-665 |
| | : | |
| v. | : | |
| | : | |
| **COUNTY OF CHESTER, et al.** | : | |
| **Defendants** | : | |
| | : | |

## ORDER

**AND NOW**, this 5th day of October 2005, upon consideration of Plaintiffs' Motion to Compel [Document #41], Defendants' opposition thereto, and each parties' memoranda of law, it is hereby **ORDERED** that Plaintiffs' Motion to Compel is **GRANTED**. Subject to an appropriate confidentiality order to be submitted to the Court within seven days of the date of this Order, Defendant PrimeCare Medical, Inc. shall produce the Mortality Review report that its peer review committee generated after the death of Plaintiffs' decedent.

It is so **ORDERED**.

BY THE COURT:

_____
Cynthia M. Rufe, J.